# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN RAY BROWN,<br><br>    Petitioner,<br><br>    v.<br><br>A.A. LAMARQUE, Warden,<br><br>    Respondent. | 1:03-cv-6870-TAG HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

At the time this petition was filed, Petitioner was in custody of the California Department of Corrections and Rehabilitation serving a indeterminate sentence of twenty-five years to life, pursuant to a judgment of the State of California, County of Fresno.  (Clerk's Transcript on Appeal ("CT") 304-306).  On March 28, 2000, Petitioner was convicted by jury of petty theft with two prior theft-related convictions (Cal. Pen. Code § 666), and theft of account information (Cal. Pen. Code § 484e(e)), with ten prior serious felony convictions that qualified as strikes under California's Three Strikes law (Cal. Pen. Code §667, subds. (b)-(I), & 1170.12, subds. (a)-(e)).  (CT 192-203).

Petitioner appealed his conviction to the California Court of Appeals, Fifth Appellate District ("5th DCA"), which affirmed the judgment on September 23, 2002.  (Doc. 13, Ex. E).  On November 1, 2002, Petitioner filed a petition for review in the California Supreme Court (id., Ex. H), which was denied on December 11, 2002.  (Id., Ex. I).

Petitioner filed the instant federal petition on December 3, 2003. (Doc. 1). On May 18, 2004, Respondent filed his Answer. (Doc. 13). On August 27, 2004, Petitioner filed his Traverse. (Doc. 17).

Respondent concedes that, insofar as Petitioner's issue challenges the state court's ruling on his motion to replace counsel at the sentencing hearing, it is exhausted. (Doc. 13, p. 3). Respondent asserts that, to the extent Petitioner seeks to challenge the state court's denial of new counsel as it would have affected the trial itself, Petitioner's claim is not exhausted and Respondent does not waive the exhaustion requirement. (Doc. 13, p. 3).

## FACTUAL BACKGROUND

The Court adopts the succinct Statement of Facts in the 5th DCA's unpublished decision:

> "The facts are of little relevance to the issues on appeal; therefore, we will only recount them briefly. Appellant, while an employee of a department store, placed some items of merchandise into a customer's bag without scanning them and used another person's credit card account number for the transaction. The merchandise was valued at $130.57."

(Doc. 13, Ex. E, p. 2).

## DISCUSSION

**I. Jurisdiction.**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed on

December 3, 2003, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

**II.  Legal Standard Of Review.**

A petition for writ of habeas corpus under 28 U.S.C. 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S. at 412-413.

The first prong of federal habeas review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and mixed questions of law and fact.  Williams v. Taylor, 529 U.S. at 407-410;  Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. at 405.  A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner."  Brown v. Payton, 544 U.S. at 141.  Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.  Wiggins v. Smith, 539 U.S. 510, 511 (2003),  citing Williams v. Taylor, 529 U.S. at 409.  Section 2254(d)(1)'s reference to "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093 (9th Cir. 2005).

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's

claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004). The AEDPA also requires that considerable deference be given to a state court's factual findings. A state court's factual findings are presumed to be correct, and such presumption of correctness may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court must independently review the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2000). Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

**III.  Review Of Petitioner's Claims.**

The instant petition itself alleges a single ground for relief, discussed below.

**Ground One          Petitioner Was Denied His Federal Constitutional Rights When The Trial Court, At Sentencing, Denied His Marsden Motion.**

Petitioner contends that the state trial court committed prejudicial error when it "refused to allow Petitioner to move the court for substitution of counsel, refused to appoint new counsel; and refused to allow him or his counsel to state the reasons for this motion/request." (Doc. 1, p. 6). Petitioner explains that because no state court permitted him a hearing on his motion, made pursuant

to People v. Marsden, 2 Cal.3d 118 (1970), to replace counsel who, Petitioner maintains, "was prejudicially ineffective due to a conflict of interest," the "adverse effects of trial counsel's divided fiduciary loyalty between a prosecution witness and the petitioner has never been evaluated." (Id.). This contention is without merit.

**A. Procedural History.**

At his sentencing hearing, Petitioner told the trial court that he had recently discovered that his attorney, appointed as an alternate public defender, was associated with a firm that had represented one of the prosecution witnesses in another matter, that he was entitled to a "conflict free" defense, and therefore that he was requesting "to have a new attorney represent me at my judgment hearing." (RT 1731). The judge told Petitioner he would only hear arguments from Petitioner's attorney; thereafter, Petitioner's attorney asked permission to make a Marsden motion, but the court stated, "Not at this time." (Id.). Counsel attempted to rephrase his request, but the trial court again denied it: "That's denied. It's untimely at this point." (Id.).

Counsel then attempted to gain permission for Petitioner to raise other issues related to a request for a new trial, but the trial court again refused. (RT 1733). Counsel stated, "Without hearing the issues, I don't know how they could be denied, without hearing them." (Id.). The court responded, "Should have been done before today's date, Counsel. That's denied." (Id.).

In his direct appeal, Petitioner challenged the trial court's summary refusal to grant a Marsden hearing as a violation of his Sixth Amendment right to counsel and his right to due process. (Doc. 13, Exh. B, p. 11). Although Petitioner accepted that the "harmless beyond a reasonable doubt" standard of Chapman v. California, 386 U.S. 18 (1967) was applicable, he nevertheless argued for a reversal of his conviction per se, relying on the Marsden decision itself, which concluded that, because the trial court had not conducted any hearing at all, on such a deficient record the California Supreme Court "cannot conclude beyond a reasonable doubt that this denial of the effective assistance of counsel did not contribute to the defendant's conviction." (Doc. 13, Exh. B, p. 16, quoting Marsden, 2 Cal.3d at 126).

Respondent contended on appeal that Petitioner had only requested a Marsden hearing to replace his counsel at sentencing; therefore, even if the trial court committed error, the remedy would

be to remand the case to conduct a Marsden hearing and, potentially, to resentence Petitioner with new counsel present.  (Doc. 13, Exh. C, p. 15, n. 6).

Citing Marsden, the 5th DCA concluded that the trial court had indeed erred in refusing to conduct a hearing into Petitioner's request to appoint new counsel.  (Doc. 13, Exh. E, p. 5). However, the 5th DCA concluded that the error was not prejudicial.  Relying on People v. Washington, 27 Cal.App.4th 940 (1994), in which the failure to conduct a Marsden hearing upon a request made at the motion for a new trial was found not to be prejudicial error, the 5th DCA concluded as follows:

> Likewise here, we fail to see how appellant was prejudiced in any way by the trial court's failure to hold a Marsden hearing.  Appellant's motion was not based on ineffective assistance of counsel; rather, it was based solely upon appellant's complaint that he felt his trial counsel had a conflict of interest.  Thus, appellant was essentially arguing that his counsel could not properly represent him at sentencing.  Even if appellant was correct in that assertion, we fail to see how different trial counsel could have provided appellant with a more favorable result. Appellant was sentenced under the Three Strikes scheme.  The prosecution alleged, and the jury found true, that appellant had previously suffered 10 prior serious and/or violent felonies.  Nine of the prior felonies were for robbery (§ 211) and one was for kidnapping (§ 207).  All 10 of the prior convictions are defined as serious and violent felonies pursuant to the Three Strikes law.  Appellant's sentence would remain the same, unless the trial court struck nine of appellant's prior convictions. However, at sentencing, the trial court explained that it felt it would be an abuse of discretion to sentence appellant to anything but a Three Strikes sentence.  Therefore, we find beyond a reasonable doubt that appellant would have received the same result regardless of the Marsden error.

(Doc. 13, Exh. E, pp. 7-8)(citations omitted).

**B.  Petitioner Was Not Denied His Federal Constitutional Rights By The Trial Court's Refusal To Conduct A Marsden Hearing**.

Assuming that the 5th DCA was correct that the trial court erred in not affording Petitioner a hearing on his Marsden motion, the issue now before this Court is whether the state court's determination beyond a reasonable doubt that Petitioner was not prejudiced by the error was either contrary to or an unreasonable application of clearly established federal law.  The Court concludes that it is not.

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and therefore is properly considered in a habeas proceeding. Bland v. California Dept. of Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218

F.3d 1017, 1023 (9th Cir.2000).  It is well settled that when a criminal defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction.  See id. at 1475-76; United States v. Robinson, 913 F.2d 712, 716 (9th Cir.1990).

It is also well-settled, however, that a defendant does not have the right to counsel of his choice in a criminal proceeding.  Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989); United States v. Rewald, 889 F.2d 836, 856 (9th Cir.1989).  The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel.  See Morris v. Slappy, 461 U.S. 1, 14 (1983).  While a defendant has the right to make a motion for new counsel based on the defendant's perception of ineffective assistance of counsel, he does not have an automatic right to the substitution of counsel simply because he is dissatisfied with appointed counsel's performance.  Jackson v. Ylst, 921 F.2d 882, 888 (9th Cir.1990).

The ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated.  Schell, 218 F.3d at 1024-1025.  The habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Id. at 1026.

Here, as mentioned, error by the state trial court in denying outright Petitioner's motion without a hearing is assumed.  The next issue is whether and to what extent a prejudice analysis should be applied to determine whether granting the petition is appropriate in this instance.  In Bland, the Ninth Circuit reached a conclusion similar to that of the California Supreme Court in Marsden, i.e., that because denial of a hearing creates a record from which no meaningful review can be had, reversal of the conviction without a prejudice analysis is appropriate.  Bland, 20 F.3d at 1477-1479.

However, Bland's holding was later limited and distinguished by the Ninth Circuit in Schell. In that case, the petitioner contended that he was entitled under Bland and Crandell v. Bunnell,

144 F.3d 1213 (9th Cir. 1998), to a per se reversal of his conviction. The <u>Schell</u> court rejected this contention:

> In <u>Bland</u>, the defendant wanted appointed counsel to replace his previously retained counsel. The <u>Bland</u> court held that failure to allow the defendant to replace his retained counsel violated his qualified right to choice of counsel, which was prejudicial per se. The qualified right of choice of counsel applies only to persons who can afford to retain counsel....In this case, Schell sought appointment of counsel to replace appointed counsel. There is no suggestion that Schell could or wanted to retain his own counsel. Consequently, the erroneous denial of the motion for substitute counsel did not implicate Shell's qualified right to counsel of his choice, and the per se prejudice rule from Bland is not applicable....
>
> <u>Crandell</u> also is distinguishable. In <u>Crandell</u>, the defendant was improperly forced to choose between incompetent counsel and no counsel at all. He chose the latter and to represent himself. Under those unique circumstances, we concluded that no showing of prejudice was required because Crandell was improperly left with no counsel at all. The inherent prejudice in <u>Crandell</u> was therefore the denial altogether of the right to counsel, not the denial of a motion for substitute counsel....
>
> In this case, the issue is neither Schell's right to choice of counsel nor a denial of counsel. <u>Instead, the basic question is simply whether the conflict between Schell and his attorney prevented effective assistance of counsel</u>.

<u>Schell</u>, 218 F.3d at 1025-1026. (Citations omitted)(Emphasis supplied).

Having distinguished both <u>Bland</u> and <u>Crandell</u>, the Ninth Circuit then framed the issue as "not whether the state trial court 'abused its discretion' in not deciding Schell's motion, *but whether this error actually violated Schell's constitutional rights* in that the conflict between Schell and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." <u>Id.</u> at 1026. (Emphasis supplied).

The Ninth Circuit went on to point out, however, that "not every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights." <u>Id.</u> at 1027. The Court remanded the case to the district court with instructions to conduct an evidentiary hearing to determine the nature and extent of the conflict between Schell and his attorney, and whether that conflict deprived Schell of the representation to which he was entitled under the Sixth Amendment. <u>Id.</u> "In the event that the trial court determines that a serious conflict did exist that resulted in the constructive denial of assistance of counsel, no further showing of prejudice is required ; and Schell's trial shall be presumed to have been unfair." <u>Id.</u> at 1028. If, however, the "serious conflict

8

did not rise to the level of a constructive denial of counsel, [then] Schell would have to prove he was prejudiced by the conflict." Id.

Here, as in Schell, Petitioner maintains that a conflict of interest existed between him and his appointed counsel, by virtue of counsel's association with a law firm that had represented a prosecution witness on a prior occasion. "To establish a sixth amendment violation based on a conflict of interest, a defendant must show that (1) that counsel actively representing conflicting interests, and (2) that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). Petitioner must prove an actual conflict "through a factual showing on the record." Morris v. California, 966 F.2d 448, 455 (9th Cir. 1991). As mentioned previously, Petitioner must also show that the conflict was so egregious that it resulted in the constructive denial of assistance of counsel. Schell, 218 F.3d at 1028.

Petitioner has not met this burden. First, it bears emphasis that Petitioner never requested a Marsden motion during trial, nor did the scope of the Marsden motion he attempted to make during his sentencing hearing encompass trial counsel's performance at the trial itself. Indeed, Petitioner explicitly indicated he wanted to make a Marsden motion to replace his attorney at the sentencing hearing. At no time during the trial court proceedings or in his appeal, did Petitioner indicate any broader scope for his request, nor did he ever raise the ineffective assistance of his trial counsel, nor the ineffectiveness of appellate counsel for failure to raise a similar claim against trial counsel. Moreover, in this petition, Petitioner has narrowly framed his issue to challenge the state court's denial of that Marsden request at sentencing.

Thus, the Court's initial inquiry is limited to a determination whether Petitioner has shown that any conflict between trial counsel and him was sufficiently grave to constructively deny him the effective assistance of counsel during his sentencing hearing. Schell, 218 F.3d at 1028. It was not.

At the time of his sentencing hearing, Petitioner had already been convicted by a jury. Also, ten prior "strike" convictions had already been established. In California, when a defendant who has been convicted of a felony is shown to have suffered two or more previous serious or violent felony convictions, California's Three Strikes law provides that "[p]robation for the current offense shall not be granted...." Cal. Pen. Code § 667(c)(2). Moreover, in such cases, "[t]here shall not be a

commitment to any other facility other than the state prison." Cal. Pen. Code § 667(c)(4). Finally, the law expressly provides that the *minimum* sentence under such circumstances is an indeterminate term of twenty-five years to life, the very sentence Petitioner received in this case. Cal. Pen. Code § 667(e)(2)(A)(I).

Although in California the trial court retains the discretion to dismiss prior strikes "in the interest of justice," see People v. Superior Court (Romero), 13 Cal.4th 497 (1996), the trial court here was unequivocal in stating that Petitioner, with ten prior strikes, including nine for burglary and one for kidnapping, was not a legitimate candidate for dismissing prior strikes under Romero. (RT 1734). Indeed, the court went so far as to say that "[i]t would be an abuse of discretion for *any judge in the State of California* to give you something *other than* a Three Strikes sentence." (Id.) (Emphasis supplied).

For his part, Petitioner's attorney argued vigorously at the sentencing hearing for a reduced sentence under Romero. (RT 1726-1730). Indeed, after counsel's request for a continuance of the hearing in order to prepare a written Romero motion and to make copies of letters supporting Petitioner was denied, counsel discussed the length of time during which Petitioner had accumulated his strikes, that most of the strikes resulted from a single 1983 prosecution, that Petitioner incurred a 17-year sentence for those offenses, that he had successfully completed parole, that he had obtained employment, that the underlying petty theft conviction was not itself a serious crime, that the loss to the victim amounted only to several hundred dollars, and that Petitioner had been honest with the court about his prior convictions. (Id.). Given the limitations imposed by the Three Strikes law and the trial court's refusal to even consider dismissing any prior strikes, there was little more any trial counsel could have done to affect the outcome of the sentencing hearing. This is precisely what the 5th DCA concluded in its opinion.

While the Court can easily imagine that a bona fide conflict of interest regarding a prosecution witness could prejudice a criminal defendant during the guilt phase of a criminal trial, it is much harder to envision how such a conflict would impede trial counsel's performance within the narrow parameters of a sentencing hearing such as has been described in this case, especially where the prosecution witness purportedly at the heart of the conflict of interest plays no role

whatsoever. Because of the limited scope of the sentencing hearing, the unavailability of any sentencing options except the twenty-five year to life sentence imposed by the trial court, and that court's clearly-stated unwillingness to consider any relief under Romero, Petitioner simply cannot establish that the purported conflict between him and his trial counsel was of such a serious nature that it constructively denied him the right of counsel under the Sixth Amendment at his sentencing hearing. Schell, 218 F.3d at 1028.

Because Petitioner did not suffer a constructive denial of counsel, he must then demonstrate prejudice under Strickland v. Washington, 466 U.S. 668 (1984). Schell, 218 F.3d at 1028. For the reasons already described by the 5th DCA, he cannot do so.

In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. at 687; Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. To establish this, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. The petitioner must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id.; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential, and a court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, a petitioner must show prejudice, i.e., whether counsel's errors were so egregious as to deprive him of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688, 694. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; Williams v. Taylor, 529 U.S. at 391. In so doing, the Court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza,

78 F.3d at 1345; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

In this case, Petitioner has established neither prong of Strickland. First, he has not shown that counsel's performance at the sentencing hearing was deficient. Indeed, as the Court has already indicated, counsel appears to have done everything a competent attorney reasonably could have done to obtain a reduced sentence; indeed, under the constraints imposed by the Three Strikes sentencing scheme, the sentence imposed by the trial court was virtually inevitable regardless of what counsel did or did not do. This, in turn, leads to Petitioner's second failure–to establish that it was reasonably probable that but for any deficiency in trial counsel's performance, a different outcome would have resulted. In light of all the circumstances in this case, Petitioner cannot make such a showing.

Accordingly, the state court's denial of this claim was not contrary to nor an unreasonable application of clearly established federal law.

### C. Petitioner's Claim Does Not Extend To Trial Issues.

In the documents supporting his petition, Petitioner argues that the conflict with trial counsel affected the outcome of the trial. (Doc. 8, pp. 10-20). Petitioner contends that his attorney had previously represented a prosecution witness, Brian Risinger, in another criminal matter, that his attorney was aware of Risinger's criminal record, and that he took it upon himself to notify the prosecution of this fact, which, Petitioner argues, allowed the prosecution to take preemptive measures to avoid having Risinger impeached at trial. (Id.). This issue, however, has not been properly raised or exhausted and is not therefore before this Court.

The issue raised in the state court and exhausted in the California Supreme Court was limited to the state court's denial of the Marsden motion for new counsel at sentencing.[1] At no point in the state court proceedings did Petitioner ever argue he was denied a hearing on a Marsden motion regarding replacement of trial counsel during trial. Nor did he ever argue, in state trial court or on appeal, the ineffective assistance of his counsel at trial. As mentioned previously, Respondent has

---

[1] In his colloquy with the trial judge at sentencing, Petitioner stated, "And based on [the conflict of interest] I would request a Marsden to have a new attorney represent me at my judgment hearing...." (RT 1731). Although Petitioner referred to the "judgment" hearing, it is clear from the context that he is referring to the sentencing hearing, the only remaining court proceeding prior to his appeal.

expressly refused to waive exhaustion insofar as Petitioner's claim extends beyond the sentencing hearing.

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 8 (1992) (factual basis), superceded by statute as stated in Williams v. Taylor, 528 U.S. 362 (2000).

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-366; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), as amended, 247 F.3d 904 (9th Cir. 2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir. 1998). In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "opportunity to pass upon and correct alleged violations of the prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-366.

///

The Court concludes that Petitioner's claim is limited to the effect of the state court denial of a Marsden hearing for replacement of counsel at sentencing, that any extension or construction of that argument to counsel's performance at trial has never been presented to the state court and is therefore unexhausted, and that therefore this Court need not consider the effect of the state court's determination on the trial itself or Petitioner's counsel's representation at trial. Simply put, such considerations are not properly part of these habeas proceedings.

For the foregoing reasons, the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law. Therefore, Petitioner's claim must be rejected and his petition must be denied.

## ORDER

Accordingly, the Court HEREBY ORDERS that Petitioner's Petition for Writ of Habeas Corpus (Court Doc. 1), is DENIED with prejudice.

The Clerk of the Court is DIRECTED to enter judgment for Respondent and close the file.

IT IS SO ORDERED.

Dated:   **February 20, 2007**              **/s/ Theresa A. Goldner**
**j6eb3d**                                   UNITED STATES MAGISTRATE JUDGE